# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs)  **No. 14-1320** (McDowell County 12-F-119-M)

**David M.,**
**Defendant Below, Petitioner**

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David M.,[1] by counsel Floyd A. Anderson, appeals the Circuit Court of McDowell County's December 1, 2014, order sentencing him to a term of incarceration of five to ten years for one count of second-degree sexual assault and a consecutive term of incarceration of two to ten years for one count of incest.[2] The State, by counsel Laura Young, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in allowing evidence of prior bad acts and DNA evidence to be introduced into his trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 23, 2012, the McDowell County grand jury indicted petitioner on one count of incest against his niece J.M. and one count of second-degree sexual assault. The indictment

---

[1]"We follow our past practice in ... cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. W.Va. Dep't of Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted). *See also State v. Edward Charles L.,* 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the [petitioner], we have referred to the [petitioner] by his last name initial."(citations omitted)).

[2]Petitioner was separately convicted and sentenced to a term of incarceration for one count of voluntary manslaughter in a separate criminal proceeding. Petitioner's sentence for voluntary manslaughter is not at issue in the instant appeal.

1

charged that the sexual crimes occurred between August and September of 1982. In July of 2013, the State filed notice of its intent to use evidence of prior bad acts pursuant to Rule 404(b) of the West Virginia Rules of Evidence. The proposed evidence related to earlier acts allegedly committed by petitioner beginning in the early 1970s wherein he began a systematic and routine pattern of sexually and physically abusing his nieces, J.M. and M.M., and his parents' foster children, P.O. and D.O., and physically abusing his nephew R.M. every Saturday and at random times until the early 1980s. A *McGinnis* hearing[3] was held September 27, 2013, wherein the State produced four witnesses: J.M., M.M., R.M., and P.O.[4] J.M. testified that the sexual abuse began in approximately 1972 and continued routinely every Saturday until approximately 1983. According to J.M., the sexual abuse ceased for a brief period while she was pregnant with petitioner's child.[5] M.M. testified that petitioner forced her to perform oral sex on him and to have intercourse. R.M. testified that on "every Saturday" petitioner would "pull all of our clothes off, and we would have to lay across the bed and hold each other, one hold the legs and one hold the arms, and he had a [miner's] belt that we would get whippings with[.]"

At the hearing, the State argued that the prior bad act evidence was offered for the limited purposes of showing petitioner's motive and common scheme or plan. Petitioner's counsel argued that the testimony regarding the physical and sexual abuse was too remote in time and that the evidence was more prejudicial than probative. Thereafter, on October 17, 2013, the circuit court ruled that the State would be allowed to introduce evidence of the sexually-related violence to show his lustful disposition toward young female relatives, and proof of an opportunity. The circuit court also ruled that the State was prohibited from introducing any evidence that was non-sex related because it does not show motive of a lustful disposition.

In December of 2013, the State filed a second notice of intent to use evidence of prior bad acts pursuant to Rule 404(b). The proposed evidence related to alleged acts wherein petitioner forced R.M. to attempt sexual acts with J.M., P.O., and D.O. while he watched. These acts occurred during the same time period at the other alleged sexual and physical abuse. The State also argued that these acts were probative of petitioner's lustful disposition towards young girls in the family. The circuit court held another *McGinnis* hearing on February 24, 2014. The State produced three witnesses J.M., R.M., and P.O. R.M. testified that petitioner forced him to perform specific sexual acts with J.M., P.O., and D.O. while he watched. J.M. and P.O. further testified that petitioner forced R.M. to attempt to have sexual intercourse with them on the bathroom floor while he watched. Furthermore, J.M. testified that petitioner forced her to "masturbate in front of everyone" as a form of punishment. Testimony further revealed that petitioner physically abused the children if they failed to appease his sexual perversions.

---

[3]*See State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

[4]J.M. and P.O. each were approximately six years old when the alleged abuse began. M.M. was approximately nine years old and R.M. was approximately five years old when the alleged abuse began.

[5]J.M. gave birth to petitioner's baby, T.M., in August of 1982. T.M. died shortly before petitioner's trial.

Thereafter, on May 27, 2014, petitioner filed a motion to suppress any DNA evidence of himself or his son, T.M. because the State failed to show a proper chain of custody for the DNA samples. The following day, the circuit court held a suppression hearing wherein Michael Spradlin, an investigator for the McDowell County Prosecutor's Office, testified. Mr. Spradlin testified that he collected two "buccal swabs" from petitioner on July 16, 2012. According to Mr. Spradlin, he placed each sample inside its original packaging, which he then placed inside a "manila envelope" and closed with a "clasp." After securing the samples, Mr. Spradlin testified that he placed the samples inside a "container" which remained in his home until he delivered the samples to the forensic lab on July 30, 2012. Mr. Spradlin further testified that, upon receiving T.M.'s "blood stain collection card" from the medical examiner's office, he placed the card inside another envelope and "drove it straight . . . to the forensic [lab.]" By order entered June 3, 2014, the circuit court denied petitioner's motion to suppress any DNA evidence finding that "Investigator Spradlin had sole and exclusive possession of the evidentiary items while they were in his custody."

Petitioner's jury trial commenced on August 11, 2014. By order entered the same day, the circuit court ruled that the State could introduce evidence that petitioner forced R.M. to commit sexual acts on his sisters as testified to during the February 24, 2014, *McGinnis* hearing to further show petitioner's lustful disposition towards young children in his family. During the trial, the State presented the testimony of J.M., M.M., R.M., P.O., D.O., and Investigator Spradlin.[6] After the State rested, petitioner moved for a directed verdict, which was denied by the circuit court. Petitioner presented two witnesses in his defense. The State presented no rebuttal evidence or testimony. After petitioner rested, he renewed his motion for directed verdict which the circuit court denied. Following its deliberations, the jury found petitioner guilty of one count of incest and one count of second-degree sexual assault.

In August of 2014, petitioner filed a motion for post-verdict judgment of acquittal and/or motion for a new trial alleging that the evidence was insufficient to sustain a conviction for the charges of incest and second-degree sexual assault. By order entered September 24, 2014, the circuit court denied petitioner's motion. In December of 2014, the circuit court sentenced petitioner to a term of incarceration of five to ten years for one count of second-degree sexual assault, in violation of West Virginia Code § 61-8B-4, and a consecutive term of incarceration of two to ten years for one count of incest, in violation of West Virginia Code § 61-8-12. The circuit court also ordered that petitioner be subject to a fifty-year term of supervised release pursuant to West Virginia Code § 62-12-26. This appeal follows.

On appeal, petitioner argues that the circuit court erred in admitting Rule 404(b) evidence in the form of J.M., M.M., R.M., and P.O.'s testimony because the alleged prior bad acts occurred eight to ten years prior to the date of the charges in the indictment, thus too remote in time. This Court has held that

> [w]hether evidence offered is too remote to be admissible upon the trial of
> a case is for the trial court to decide in the exercise of a sound discretion; and its

---

[6]Petitioner did not include a complete copy of the trial transcript as part of the appendix record. Furthermore, petitioner only included excerpts of Mr. Spradlin's testimony.

action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.

Syl. Pt. 5, *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945). In this case, the circuit court heard testimony that petitioner sexually abused J.M., M.M., R.M., P.O., and D.O. from roughly 1972 through 1983. The crimes underlying the current conviction occurred in 1982. Thus, the time frame of the 404(b) evidence is relevant. Moreover, "[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syl. Pt. 6, *State v. Gwinn,* 169 W.Va. 456, 288 S.E.2d 533 (1982). For these reason, we find no abuse of discretion.

Petitioner also argues that the 404(b) evidence was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice. This Court has stated:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. Jonathan B.,* 230 W.Va. 229, 236, 737 S.E.2d 257, 264 (2012) (quoting *State v. LaRock,* 196 W.Va. 294, 310–11, 470 S.E.2d 613, 629–30 (1996)). We have further explained:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. Pt. 2, M*cGinnis*, 193 W. Va. at 151, 455 S.E.2d at 520. It is undisputed that the circuit court conducted two *McGinnis* hearings on September 27, 2013, and February 24, 2014, but petitioner

argues that the circuit court failed to engage in an appropriate balancing test or make appropriate findings regarding the testimony about the prior alleged sexual and physical abuse. We disagree. The circuit court's consideration of the matter was apparent in the resulting orders when it explained:

> Some of the violence that the witnesses testified to was not sexually related. According to the testimony there were two types of violence the [petitioner] showed toward the girls; sexually related and non-sex related violence. The State will be allowed to introduce evidence of the sexually related violence . . . to show lustful disposition to young girls in his family. The sexually related violence is part of the forcible compulsion and part of the event. The sex related violence shows a pattern. The sex related violence is proof of a motive of lustful disposition. . . . The State will not be allowed to introduce evidence of the violence that was non-sex related. . . . The non-sex related violence just shows that the [petitioner] is a mean person. This is exactly the type of character evidence that [Rule] 404(b) prevents.

We agree with the circuit court that the evidence was admissible for a legitimate purpose and was more probative than prejudicial.[7] We therefore find no error in this regard.

Finally, petitioner argues that the circuit court erred in admitting petitioner's DNA samples and T.M.'s "blood stain collection card" into evidence. Petitioner contends that the State's investigator did not establish a proper chain of custody for these exhibits. "'The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal' Syllabus Point 2, *State v. Davis,* 164 W.Va. 783, 266 S.E.2d 909 (1980)." Syl. Pt. 6, *State v. McCartney,* 228 W.Va. 315, 719 S.E.2d 785 (2011). This Court has plainly established that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). In this case, petitioner does not allege or point to any evidence in the record to show that the evidence was not genuine or had been tampered with in any manner. Further, the State's investigator Mr. Spradlin testified during the suppression hearing that petitioner's buccal swab was in his exclusive possession until he delivered the sample to the forensic lab. Similarly, Mr. Spradlin testified that upon receiving T.M.'s "blood stain collection card" from the medical examiner's office, he placed the card

---

[7]This Court has held that

> [c]ollateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment . . . .

Syl. Pt. 2, in part, *Edward Charles L.,* 183 W.Va. at 643, 398 S.E.2d at 125.

inside another envelope and "drove it straight . . . to the forensic [lab.]" Under the facts of this case, the circuit court's ruling admitting this evidence was not an abuse of discretion.[8]

For the foregoing reasons, the circuit court's December 1, 2014, order, is hereby affirmed.

Affirmed.

**ISSUED: November 23, 2015**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[8]Upon a careful review of the appendix record on appeal, we observe a potential discrepancy between the sentence imposed in the December 1, 2014, sentencing order and the sentence required by the statute in effect at the time of the commission of petitioner's crime. *See* West Virginia Code § 61-8-12 (1931); s*ee also* Syl. Pt. 4, *State v. Easton,* 203 W.Va. 631, 510 S.E.2d 465 (1998) ("'The statute in force at the time of the commission of an offense governs the character of the offense, and generally the punishment prescribed thereby, unless, as provided by our statute, the defendant elects to be punished as provided in an amendment thereof.' Syllabus point 4, *State v. Wright,* 91 W.Va. 500, 113 S.E. 764 (1922).") The parties and circuit court may wish to address this issue pursuant to the circuit court's authority in Rule 35 of the West Virginia Rules of Criminal Procedure.